Anthony T. Ditty (SBN 105597)
tonyditty@gmail.com
**LAW OFFICES OF ANTHONY T. DITTY**
1017 E. Grand Ave
Escondido, CA 92025
Tele (760)747-1200 Fax (760)747-1188

Kerry K. Fennelly (SBN 232621)
kfennelly@donaldsonandcornwell.com
Valentina S. Mindirgasova (SBN 272746)
vmindirgasova@donaldsonandcornwell.com
Cornwell & Baldwin
1017 East Grand Avenue
Escondido, CA 92025
(760) 747-1100 tel
(760) 747-1188 fax

Attorneys for Plaintiffs,
GCIU-Employer Retirement Fund

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GCIU-EMPLOYER RETIREMENT FUND<br><br>Plaintiff,<br>v.<br>QUAD/GRAPHICS, INC.,<br>Defendant. | CASE NO. 2:16-cv-3391<br><br>RELATED CASE NO. 2:16-cv-00100 ODW-AFM<br><br>COMPLAINT TO ENFORCE ARBITRATION AWARD, IN PART, AND TO VACATE OR MODIFY ARBITRATION AWARD, IN PART |

Plaintiff, GCIU - Employer Retirement Fund ("ERF") brings this action against Defendant Quad/Graphics, Inc. ("Quad") pursuant to the provisions of Title IV of the Employee Retirement Income Security Act ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA") 29 U.S.C. §1381 et seq.

**JURISDICTION**

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1451(c).

**VENUE**

2. Venue is appropriate in this judicial district pursuant to 29 U.S.C. §1451(d), in that the GCIU-Employer Retirement Fund is administered at its principal place of business in City of Industry, California. Venue is also appropriate because the arbitration proceedings which are the subject of this action were held in Los Angeles, California. *Cortez Byrd Chips, Inc. v. Bill Harbert Const. Co.* 529 U.S. 193, 200 (2000).

**RELATED ACTION**

3. This action is related to and involves the same parties and overlapping issues as *GCIU-Employer Retirement Fund v. Quad/Graphics, Inc.*, Case No. 2:16-cv-00100 ODW-AFM ("Related Action"), an action that is presently pending in this Court. Simultaneous with the filing of this Complaint, ERF has filed its Notice of Related Action as required by Local Rule 83-1.3.

**THE PARTIES**

4. ERF is a multiemployer pension plan within the meaning of 29 U.S.C. §§1002(37) and 1301(a)(3) with its administrative offices located at 13191 Crossroads Parkway North, Suite 205, City of Industry, California 91746-3434. ERF is authorized to bring this action in its own name pursuant to a provision contained within Article VIII, Section 18 of the Fund's Trust Agreement, which permits all legal actions to be prosecuted in the name of the Fund.

5. Defendant, Quad/Graphics, Inc. ("Quad") is engaged in the commercial printing business. Quad is a Wisconsin corporation, with its headquarters and principal place of business in Sussex, Wisconsin. At all times relevant to this action, Quad has been an "employer" as the term is defined by section 3(5) of ERISA, 29 U.S.C. § 1002(5), and was engaged in an industry affecting commerce, as

defined by section 301(a) of the Labor-Management Relations Act, 29 U.S.C. § 185(a).

**THE FACTS**

**The withdrawal liability assessment.**

6. In July 2010, Quad acquired World Color (USA), formerly Quebecor World (USA), Inc. ("Quebecor"). Quebecor had contributed to ERF pursuant to the terms of various collective bargaining agreements ("CBAs") at several of its facilities. Quebecor had a CBA with the Graphic Communications Conference, International Brotherhood of Teamsters, Local 826-C, under which Quebecor was required to make contributions to ERF on behalf of certain of its employees at Quebecor's Versailles, Kentucky facility.

7. In December, 2010, the employees at Quad's Versailles, Kentucky facility voted to decertify Local 826-C as their exclusive bargaining representative and on December 27, 2010, the results of that election were certified by the National Labor Relations Board.

8. Quad notified ERF in writing of the decertification. Quad also notified ERF it planned to cease participation in the ERF at all of its other facilities.

9. Following these withdrawal notifications, the ERF sent Quad notices of Quad's (a) 2010 Partial Withdrawal Liability, and (b) 2011 Complete Withdrawal Liability on February 1, 2013 pursuant to Section 4219 of ERISA, 29 U.S.C. §1399. ERF's notices also demanded payment from Quad on both liability assessments. Under the February 1, 2013 assessment, ERF set forth a schedule of payments requiring Quad to pay $321,151.22 in monthly payments for 20 years on the 2010 Partial Withdrawal and $351,501.80 per month for approximately 8 1/2 years for the 2011 Complete Withdrawal.

10. Quad disagreed that a partial withdrawal occurred in 2010 and thus disputed 2010 Partial Withdrawal Liability Assessment. Quad also disputed the calculation methodology of the 2010 and 2011 Complete Withdrawal Liability

Assessments and thus the related demands for payments as to both assessments. Among other things, Quad took the position that even though its Versailles, Kentucky facility ceased participating in the Fund in 2010, the obligation to contribute for its employees at the Versailles facility continued into January 2011, such that no partial withdrawal occurred in 2010, and thus no partial withdrawal liability was owed for 2010.  ERF took the position that the obligation to contribute for Versailles ceased when the vote to decertify was confirmed by the NLRB in December 2010, thereby creating partial withdrawal liability for 2010.

**The arbitration proceedings.**

11. Quad submitted its dispute over the 2010 withdrawal date and the methodologies used to calculate the 2010 and 2011 Withdrawal Liability Assessments to arbitration pursuant to Section 4221(a)(1) of ERISA, 29 U.S.C. §1401(a)(1). The arbitration proceedings were conducted in accordance with the Multi-Employer Pension Plan Arbitration Rules for Withdrawal Liability Disputes ("Rules") of the American Arbitration Association ("AAA").

12. Quad's challenges to ERF's liability assessments included the questions of (a) whether Quad's obligation to contribute to the ERF for Versailles ceased in December 2010 and (b) whether the methodology used by ERF in the calculation of a complete withdrawal liability after there has been a partial withdrawal properly sequenced certain credits.

13. Thomas J. Brewer ("Arbitrator") presided over the Arbitration hearings which were held in Los Angeles, California, from February, 2015 until issuance of the Final Award in 2016.  On May 18, 2015, the Arbitrator issued an Interim Award on the first issue of whether Quad's obligation to contribute for the Versailles facility ceased in 2010.  The Arbitrator's interim ruling found ERF had erred in its determination there was a partial withdrawal in that year.  A true and correct copy of the Interim Award is attached hereto as Exhibit 1.

14. Following the issuance of the Interim Award, Quad ceased making its required interim payments on the 2010 Partial Withdrawal Liability Assessment, claiming the Interim Award absolved it of the obligation to do so, notwithstanding the fact there had not yet been a Final Award issued.  Quad's refusal to make the required interim payments notwithstanding repeated demands resulted in ERF filing the Related Action presently pending before this court, *GCIU-Employer Retirement Fund v. Quad/Graphics, Inc.*, Case No. 2:16-cv-00100 ODW-AFM.  In response to that Related Action, Quad continues to maintain as an affirmative defense that the issuance of the Interim Award absolved it from the obligation to make its interim payments.

15. Following the issuance of the May 18, 2015 ruling, Quad asked the Arbitrator to rule on two other issues presented for decision concerning ERF's methodology in assigning credits when calculating withdrawal liability.  After receiving additional evidence on those issues, the Arbitrator issued and Amended Interim Award finding in favor of ERF on those issues.

**The Issuance of the Final Award.**

16. After submission of briefs on the proposed findings to be made in the Final Award, and briefing on issues of attorneys fees and costs, the Arbitrator issued his Final Award addressing all such issues on May 17, 2016. A true and correct a copy of the Final Award is attached hereto as Exhibit 2.

17. In the Interim Award, now confirmed in the Final Award, the Arbitrator determined that Quad's obligation to contribute to ERF under the CBA for the Versailles, Kentucky facility ("Versailles CBA") did not cease in December 2010, but was instead extended beyond the date ERF had originally used for calculating partial withdrawal liability. (Ex. 1, Interim Award at pp. 13-14, ¶¶1-4).  The Arbitrator's finding that the obligation to contribute continued was based on his interpretation of the terms of the Versailles CBA which specified the timing for when accrued contributions were to be paid to ERF for accrued

vacation and personal time taken by employees.  The terms of the CBA were not in dispute such that the Arbitrator's decision on this issue was a legal one subject to de novo review in this challenge by ERF.

18. The MPPAA provides that "[u]pon completion of the arbitration proceedings in favor of one of the parties, any party thereto may bring an action, no later than 30 days after the issuance of the arbitrator's award, in an appropriate United States district court in accordance with section 1451 of this title to enforce, vacate, or modify the arbitrator's award." 29 U.S.C. §1401(b)(2).  It has been less than 30 days since the arbitrator issued the Final Award.  ERF hereby petitions this Court to vacate and modify the Arbitrator's award in part and to enforce it in other parts.

**The challenged decisions and rulings to be vacated or modified.**

19. The Arbitrator's finding that the ERF had not complied with the law when determining the date on which Quad's obligation to contribute to the plan ceased was based on what ERF refers to as the "vacation deferral rule."  As found by the Arbitrator, because *payment* for contributions owed on accrued vacation and personal time was not required until the employees were paid for that time, the *obligation to contribute* did not permanently cease until Quad had paid all of its employees for all of their unused vacation and personal time.

20. The "vacation deferral rule" adopted by the Arbitrator had never been applied by ERF in its prior determinations of when a participating employer's obligation to make contributions to a Fund ceased, nor was it applied by ERF to Quad's other facilities having similar language in their CBAs.  The Arbitrator's new rule is also inconsistent with the policy behind The Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA") because (a) it effectively creates a gap in a withdrawing employer's obligation to make payments; (b) it delays collection of contributions thereby interrupting the policy of insuring a steady stream of payments following withdrawal; (c) its application artificially reduces an

employer's liability for its actual share or unfunded vested benefits; and, (d) its unilateral application to only one of Quad's facilities in a limited way when Quad's other facilities have the same language creates an inconsistent and conflicting application of the "law" as found by the Arbitrator.

21. The "vacation deferral rule" is also inconsistent with longstanding case law holding that once a vote to decertify a union is certified by the National Labor Relations Board (as was done for the Versailles, Kentucky facility in 2010), an employer's obligation to contribute to a fund permanently ceases. While "accrued" vacation time may remain to be *paid* after decertification, the *obligation* to make those payments is fixed, accrued and does not continue as of the date of decertification; i.e. there are no further "obligations" on the part of an employer, other than to pay what has accrued and was owed under the provisions of the terminated CBA. The Arbitrator's decision holding otherwise runs contrary to the policy and purposes behind the MPPAA.

22. As part of the Interim Award, ERF was directed by the Arbitrator to perform a reassessment of Quad's withdrawal liability *consistent* with the Arbitrator's findings, which included this new "vacation deferral rule". Since the consistent application of this rule now required a reassessment of the dates for all of Quad's facilities governed by CBAs having terms that are similar to those of the Versailles facility, the original assessments as to those other facilities also needed to be adjusted.

23. While objecting to the underlying finding, ERF voluntarily submitted revised assessments to the Arbitrator. Under the revised assessments prepared by applying the "vacation deferral rule" consistently to all of Quad's facilities, there was still a partial withdrawal followed by a complete withdrawal as existed under the original assessment. As a consequence, if the "vacation deferral rule" was upheld, Quad would continue to have two monthly payment obligations greater than or equal to its original assessment. In general, the reassessment submitted

to the Arbitrator resulted in a partial withdrawal liability for 2011 of $113,075,692, requiring 20 years of monthly payments of $348,967.47, and a complete withdrawal liability in 2012 of $94,453,492, requiring 20 years of monthly payments of $331,056.27.

24. The Arbitrator's findings as to the date a facility's obligation to contribute ceased was based on an analysis of the law and undisputed facts concerning the language of the Versailles CBA. In making this legal analysis, the Arbitrator erred and his conclusions of law must be vacated and modified by this Court.

25. As part of the Interim Award, the arbitrator also included a "finding" that Quad's facilities other than Versailles withdrew in 2011. This "finding" was not based on any evidence or issues submitted for the Arbitrator to decide. Both before and after the issuance of that "finding," ERF filed objections and asked for the opportunity to present evidence and argument as to that "finding." ERF also objected that the "finding" was not something that was submitted to the Arbitrator for decision. Notwithstanding this "finding" was irrelevant to everything that was submitted to the Arbitrator for decision, and notwithstanding the fact that the fundamental basis for the "finding" was an alleged stipulation which ERF disputed, the Arbitrator has refused to remove or modify it, or to entertain evidence on it.

26. ERF asserts the Arbitrator erred in making a finding which was outside his jurisdiction, irrelevant to the issue presented for decision in which the "finding" was made, and in failing to entertain evidence provided to the Arbitrator or give ERF the opportunity to demonstrate the inaccuracy of the finding. The Arbitrator was provided copies of the language of the CBAs of Quad's other facilities and a complete analysis of that language demonstrating that the consistent application of the vacation deferral rule would lead to an opposite result.

27. The Arbitrator was also made aware of ERF's demand submitted to Quad for information necessary for ERF to prepare and complete the "reassessment" directed by the Arbitrator. Specifically, ERF served Quad with a 29 U.S.C. §1399 (a) demand requesting information concerning contribution obligations so that information could be used in preparing the reassessment ERF was directed to prepare.  This information would also further demonstrate the payments for the other facilities and for Versailles also continued under the "vacation deferral rule" such that the "finding" of a complete withdrawal in 2011 was factually and legally erroneous.  Quad failed to respond to that demand, effectively precluding ERF from completing its reassessment and preventing ERF from using that information. As a result of Quad's failure to comply with the §1399 (a) demand, ERF has now filed suit against Quad in the Related Action seeking to obtain that information.

28. The Arbitrator also found that ERF had entered into certain stipulations of fact on which he then based the "finding" the other facilities withdrew in 2011. Notwithstanding ERF's showing the "stipulation" was not a fact that was stipulated to and was, at best, a statement of law, the Arbitrator accepted this as a fact, contrary to the evidence presented.  Additionally, since the Arbitrator changed the legal assumptions made in the claimed "stipulation" by adopting the "deferred vacation rule," ERF asserted that even if it could be construed as a stipulation of fact or law, it was contrary to the law the Arbitrator was planning to apply.  Finally, the "finding" made by the Arbitrator as to the withdrawal dates of the other facilities was not one of the issues presented to the Arbitrator for decision and was not necessary to any of the issues submitted for decision. Nevertheless, the Arbitrator found the "stipulation" binding and has entered his Final Award accordingly.  This too was error.

29. After the Arbitrator asked ERF to perform a reassessment consistent with the initial findings, ERF submitted the 29 U.S.C. §1399(a) request to Quad for

information concerning contributions owed for unpaid vacation pay since the "vacation deferral rule" required this to be taken into account when determining the date on which the obligation to contribute ceased. Quad failed to provide this information as required by statute and the Arbitrator was made aware of that fact. The Arbitrator was also advised of the rule that a party who fails to comply with these requests will be subject to an adverse inference that if the information being concealed was actually provided it would demonstrate the point ERF was arguing: that the obligation to contribute under the vacation deferral rule for each of these facilities continued past 2011 so there could not be a complete withdrawal in 2011.

30. ERF proceeded with the reassessment applying the vacation deferral rule consistently to all of Quad's facilities as alleged in Paragraph 18 above. The Arbitrator has rejected that reassessment and has instead concluded that the reassessment must be done assuming all of Quad's facilities withdrew in 2011. This inconsistent application of the Arbitrator's own "vacation deferral rule" has resulted in the inconsistent application of the "vacation deferral rule" to some facilities and ignores its application as to others.

31. ERF contends that the Arbitrator's directive that the law be applied inconsistently or that the ERF ignore the true facts and apply "findings" which were never presented for decision to the Arbitrator was error and must be vacated or modified accordingly.

32. The Arbitrator's finding that all of Quad's facilities withdrew in 2011 or that there was a complete withdrawal in 2011 was error and should be vacated or modified by this Court.

33. As noted above, after the Arbitrator issued his Interim Award, ERF challenged the "finding" that Quad's other facilities withdrew in 2011 and sought a modification of that "finding." This request was denied, in part, based on a finding ERF had "stipulated" to the fact that was used for the "finding." ERF

contends that the Arbitrator erred in denying ERF's request and in concluding ERF stipulated to the "finding." ERF had also asked that the "stipulation" be set aside because it was inconsistent with the record and was inconsistent with the claimed evidentiary basis for the finding. The Arbitrator's failure to grant that request resulted and a manifest injustice to ERF and others has resulted when an order setting it aside would have caused no prejudice to Quad such that the ruling was erroneous and must be vacated.

**The Arbitrator's erroneous rulings on attorneys' fees applications.**

34. Both parties submitted applications for attorneys' fees claiming bad faith by the other in the arbitration proceedings. In rendering the award, the Arbitrator refused to award ERF its attorney's fees in having to defend what was identified as "Issue No. 2." The issue was based on Quad's argument in the arbitration proceeding that ERF did not use the correct methodology in sequencing credits when calculating Quad's withdrawal liability assessments.

35. The ERF contends that the claim made by Quad in Issue No. 2 was specious, had no merit, and was asserted in bad faith. The Arbitrator's refusal to award ERF its attorney's fees in having to defend that issue was erroneous.

**The Decisions and Rulings to be Enforced and Confirmed.**

36. As part of the arbitration proceedings, the Arbitrator was asked to decide whether the ERF had used the correct methodology in applying credits for partial withdrawals when computing a complete withdrawal, and the sequencing of those credits. This issue was referred to as "Issue No. 2" throughout the arbitration.

37. The Arbitrator ruled in ERF's favor and determined it had used the correct methodology in applying credits and the correct sequencing. The ERF thus seeks the enforcement of the Final Awards to Issue No. 2.

**PRAYER FOR RELIEF**

WHEREFORE, ERF prays for the following relief:

1. A judgment against Defendant and in favor of Plaintiff:

    a. Vacating and modifying the Arbitrator's award concerning the adoption and application of the "vacation deferral rule" when determining the date an employer's obligation to contribute permanently ceases for purposes of calculating withdrawal liability calculations and a finding the ERF's initial assessments of withdrawal liability were correct;

    b. Vacating and modifying the Arbitrator's award and finding concerning the dates of withdrawal for Defendant's facilities should the "vacation deferral rule" be confirmed by the court so there is a consistent application of that rule to each of the facilities, thereby resulting in a partial withdrawal followed by a complete withdrawal as submitted by ERF;

    c. Vacating and reversing the Arbitrator's rulings on attorney's fees; and,

    d. Affirming and enforcing the Arbitrator's ruling concerning ERF's methodology in applying credits and the sequencing of credits in its calculation of withdrawal liability;

2. An award of ERF's attorneys' fees and costs; and,

3. Such other and further relief as is just and proper.

LAW OFFICES OF ANTHONY T. DITTY
CORNWELL & BALDWIN

Dated: May 17, 2016      By: /s/ Anthony T. Ditty
                                               Anthony T. Ditty
                                               Attorneys for Plaintiff