**O**

# United States District Court
# Central District of California

| | |
|---|---|
| GCIU-EMPLOYER RETIREMENT FUND,<br><br>                              Plaintiff,<br>     v.<br>QUAD/GRAPHICS, INC.,<br><br>                              Defendant. | Case No.: 2:16-cv-03391-ODW-AFM [Lead Case]<br><br>**ORDER CONSOLIDATING CASES** |
| QUAD/GRAPHICS, INC.,<br><br>                              Plaintiff,<br>     v.<br>GCIU-EMPLOYER RETIREMENT FUND,<br><br>                              Defendant. | Case No.: 2:16-cv-03418-ODW-AFM |

## I.    INTRODUCTION

On May 17, 2016, Plaintiff GCIU-Employer Retirement Fund ("GCIU") filed an action against Defendant Quad/Graphics, Inc. ("Quad") pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA") to enforce in part and vacate or modify in part an arbitration award issued under section 4221(a)(1) of ERISA, 29 U.S.C. § 1401(a)(1). (Compl. ¶¶ 11, 19–32, 36–37, *GCIU-Employer Retirement Fund v. Quad/Graphics, Inc.*, Case No. 2:16-cv-03391 (C.D. Cal. May 17, 2016), ECF No. 1 (hereinafter "*GCIU* Compl.").) The next day, Quad filed a separate action against GCIU to enforce in part and vacate or modify in part the same arbitration award.

(Compl., *Quad/Graphics, Inc. v. GCIU-Employer Retirement Fund*, Case No. 2:16-CV-3418 (C.D. Cal. May 18, 2016), ECF No. 1 (hereinafter "*Quad* Compl.").)

For the reasons discussed below, the Court hereby **CONSOLIDATES** the following two cases: (1) *GCIU-Employer Retirement Fund v. Quad/Graphics, Inc.*, Case No. 2:16-cv-03391 – **LEAD CASE**; and (2) *Quad/Graphics, Inc. v. GCIU-Employer Retirement Fund*, Case No. 2:16-cv-03418.[1]

## II. FACTUAL BACKGROUND

GCIU is a multiemployer pension plan with its administrative offices located in California. (*GCIU* Compl. ¶ 4.) Quad is a commercial printing business with its principal place of business and headquarters in Wisconsin. (*Id.* ¶ 5.) In July 2010, Quad acquired Quebecor World (USA), Inc. ("Quebecor"), and was thus obligated to make contributions to GCIU under various collective bargaining agreements ("CBAs") that Quebecor previously entered into with its employees, including at its facility in Versailles, Kentucky. (*Id.* ¶ 6.) In December 2010, however, Quad's employees at the Versailles facility voted to decertify the union representatives that negotiated the CBA with Quebecor, and the election was certified by the National Labor Relations Board later that month. (*Id.* ¶ 7.) As a result, Quad notified GCIU that it planned to cease making contributions to GCIU for all of its facilities, including the Versailles facility. (*Id.* ¶ 8.) On February 1, 2013, GCIU sent Quad a notice of partial withdrawal liability for 2010, and a notice of complete withdrawal liability for 2011, for the Versailles facility pursuant to section 4219 of ERISA, 29 U.S.C. § 1399. (*Id.* ¶ 9.) In those notices, GCIU laid out a monthly payment schedule for Quad for both the 2010 partial withdrawal and the 2011 complete withdrawal. (*Id.*) Under the payment schedule, Quad was required to pay $321,151.22 per month for twenty years ($93,194,558 total) on the 2010 partial withdrawal, and $351,501.80 per month for eight and a half years ($27,368,656 total) on the 2011 complete withdrawal. (*Id.*)

---

[1] After considering the allegations in the Complaints in each case, the Court deems the matter appropriate for *sua sponte* decision. *In re Adams Apple, Inc.*, 829 F.2d 1484, 1487 (9th Cir. 1987).

Quad disputed both assessments, and filed a demand for arbitration pursuant to ERISA with the American Arbitration Association to contest the payments. (*Id.* ¶ 10; *Quad* Compl. ¶ 11.) On May 18, 2015, the arbitrator issued an interim award on the issue of the 2010 partial withdrawal. The arbitrator determined that GCIU had erred in finding that Quad had partially withdrawn in 2010, and thus that GCIU was not liable for the 2010 partial withdrawal assessment. (*GCIU* Compl. ¶ 13.) Specifically, the arbitrator reasoned that because the Versailles CBA did not require Quad to make contributions until 2011, Quad did not actually withdraw from the fund until it failed to make those contributions in 2011, even though Quad's employees elected to decertify its union representatives in 2010. (*Quad* Compl. ¶ 17, Ex. 2.) GCIU refers to the rule that the arbitrator used in making this determination as the "vacation deferral rule." (*GCIU* Compl. ¶ 19.) After the arbitrator issued the interim award, Quad stopped making payments on the 2010 partial withdrawal assessment. (*Id.* ¶ 14.) On December 17, 2015, the arbitrator issued an amended interim award, in which he found that GCIU had properly calculated the 2011 complete withdrawal assessment. (*Quad* Compl. ¶ 15.) On May 17, 2016, the arbitrator issued a final award, in which he confirmed his prior decisions regarding both the 2010 and 2011 withdrawal assessments. (*GCIU* Compl. ¶ 17, Ex. 1.) The arbitrator also declined to award attorneys' fees to either party under 29 C.F.R. § 4221.10(c), which permits such an award where the opposing party engages in dilatory, harassing, or other improper conduct during the course of the arbitration proceedings. (*Id.* ¶¶ 34–35. Ex. 2 at 56.)

Both parties immediately filed Complaints with this Court pursuant to the Multiemployer Pension Plans Amendments Act, which provides that any party arbitrating withdrawal liability under ERISA "may bring an action, no later than 30 days after the issuance of the arbitrator's award, in an appropriate United States district court in accordance with section 1451 of this title to enforce, vacate, or modify the arbitrator's award." 29 U.S.C. § 1401(b)(2).

In its Complaint filed on May 17, 2016, GCIU requests that this Court vacate or modify portions of the arbitrator's final award that used the vacation deferral rule in determining that Quad did not partially withdraw in 2010. (*GCIU* Compl. ¶¶ 19–24.) GCIU also requests that this Court vacate the arbitrator's decision denying an award of attorney's fees under 29 C.F.R. § 4221.10(c). (*Id.* ¶¶ 34–35, Ex. 2 at 56.) Further, GCIU requests that this Court affirm and enforce the arbitrator's ruling regarding the 2011 complete withdrawal assessment. (*Id.* ¶¶ 36–37.)

Conversely, in its Complaint, filed on May 18, 2016, Quad requests that this Court enforce the arbitrator's interim award finding that Quad did not partially withdraw in 2010, but that the Court vacate or modify the determination that GCIU correctly calculated the 2011 complete withdrawal liability assessment. (*Quad* Compl. ¶¶ 20-21.) Additionally, like GCIU, Quad requests an award of attorney's fees and arbitration expenses under 29 C.F.R. § 4221.10(c). (*Id.* ¶ 22, Ex. 2 at 55.) On June 14, 2016, the Court informed the parties that it intended to consolidate the cases, and that any party opposing consolidation should file a brief no later than June 21, 2016. (*GCIU* Action, ECF No. 16.) The Court did not receive any timely responses from either party. Thus, the Court hereby issues this Order consolidating the two cases.

### III. LEGAL STANDARD

A district court has broad discretion to consolidate cases that involve a common question of law or fact. Fed. R. Civ. P. 42(a)(2); *Inv'rs Research Co. v. U.S. Dist. Ct. for the Cent. Dist. of Cal.*, 877 F.2d 777, 777 (9th Cir. 1989). "To determine whether to consolidate, a court weighs the interest of judicial convenience against the potential for delay, confusion and prejudice caused by consolidation." *Sw. Marine, Inc. v. Triple A Mach. Shop, Inc.*, 720 F. Supp. 805, 807 (N.D. Cal. 1989). While consolidation in generally favored, *Perez–Funez v. Dist. Dir., I.N.S.,* 611 F. Supp. 990, 994 (C.D. Cal. 1984), "consolidation may be inappropriate where individual issues predominate." *In re Consol. Parlodel Litig.*, 182 F.R.D. 441, 447 (D.N.J.

1998). The decision whether to consolidate cases is within the district court's discretion. *Pierce v. Cty. of Orange*, 526 F.3d 1190, 1203 (9th Cir. 2008); *Inv'rs Research Co.*, 877 F.2d at 777.

## IV. DISCUSSION

Here, both actions present common questions of law and fact. Although each party requests that the Court vacate, modify, or enforce different portions of the arbitrator's award, both actions ultimately stem from the same arbitration proceeding. (*Quad* Compl. at 6; *GCIU* Compl. at 12.) Furthermore, the dispute giving rise to the arbitration proceeding itself arises from common questions of law and fact concerning Quad's alleged liability for withdrawing from the fund. (*Quad* Compl. ¶ 8–9; *GCIU* Compl. ¶ 9.) That is, the gravamen of each action is that the arbitrator incorrectly decided the 2010 and 2011 withdrawal liability issues based on an incorrect reading of the relevant CBA. As a result, pretrial issues and motion practice in both actions will substantially overlap. Thus, consolidation of these actions would serve the interests of efficiency by conserving costs and judicial resources. *See Backe v. Novatel Wireless, Inc.*, No. 08-CV-01689-H (RBB), 2008 WL 5214262, at *2 (S.D. Cal. Dec. 10, 2008) (finding consolidation appropriate because "the related actions are based on the same facts and involve the same subject matter, the same discovery will be relevant to both lawsuits.").

Moreover, factors that would weigh against consolidation, such as prejudice or confusion, are not present here. *See Lewis v. City of Fresno*, No. CV-F-08-1062 OWW/GSA, 2009 WL 1948918, at *1 (E.D. Cal. July 6, 2009) (holding when exercising discretion on consolidation, a court must consider "whether the specific risks of prejudice and . . . confusion [are] overcome by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties . . . available judicial resources . . . the length of time required to conclude multiple suits [as opposed to one]"). Here, both actions were filed within one day of each other. (*Quad* Compl.; *GCIU* Compl.) Thus, the risk of prejudice due to cases being at different

stages of litigation is virtually non-existent. *Dusky v. Bellasaire Investments*, No. SACV07-874DOC, 2007 WL 4403985, at *3 (C.D. Cal. Dec. 4, 2007) (holding there was minimal risk of prejudice due to cases being at different stages of preparation when each of the cases to be consolidated "arose within a four-month period"). Furthermore, there is little risk of confusion in consolidating the cases. Both cases involve only the same two parties, and involve only the single issue of whether the arbitrator's decision was correct. (*Quad* Compl.; *GCIU* Compl.)

Finally, neither party has objected to consolidation, despite being given the opportunity to do so. (*See* Order, *GCIU-Emp. Ret. Fund*, Case No. 2:16-cv-03391 (C.D. Cal. June 14, 2016), ECF No. 16.)

## V.   CONCLUSION

For the reasons discussed above, the Court hereby **CONSOLIDATES** the following two cases:

(1)   *GCIU-Employer Retirement Fund v. Quad/Graphics, Inc.*, Case No. 2:16-cv-03391 – **LEAD CASE**;

(2)   *Quad/Graphics, Inc. v. GCIU-Employer Retirement Fund*, Case No. 2:16-cv-03418;

All documents concerning either action should be filed in the **LEAD CASE** only.

**IT IS SO ORDERED.**

August 16, 2016

_____
                **OTIS D. WRIGHT, II**
         **UNITED STATES DISTRICT JUDGE**