# United States District Court
# Central District of California

| | |
|---|---|
| GCIU-EMPLOYER RETIREMENT FUND,<br><br>        Plaintiff,<br><br>    v.<br><br>QUAD/GRAPHICS, INC.,<br><br>        Defendant. | Case No. 2:16-cv-03391-ODW (AFMx)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PREJUDGMENT AND POSTJUDGMENT INTEREST [56]** |

## I. INTRODUCTION

This case concerns withdrawal liability under the Employee Retirement Income Security Act of 1974 ("ERISA") and the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"). The Court recently entered judgment in this matter, and Plaintiff GCIU-Employer Retirement Fund ("Fund") now moves for an award of prejudgment and postjudgment interest. (ECF No. 56.) For the reasons discussed below, the Court awards the Fund portions of the postjudgment interest it seeks but declines to award any prejudgment interest.[1]

---

[1] After considering the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

1

## II. FACTUAL BACKGROUND

The Fund is a multiemployer pension plan, and Defendant Quad/Graphics, Inc. ("Quad") is an employer engaged in the commercial printing business. (Compl. ¶¶ 4–5, ECF No. 1.) Quad entered into a collective bargaining agreement with the Graphic Communications Conference, International Brotherhood of Teamsters, Local 826-C ("Local 826-C"), under which Quad was required to make contributions to the Fund on behalf of certain employees at its Versailles, Kentucky facility. (*Id.* ¶ 6.) In 2010, Quad's Versailles employees voted to decertify Local 826-C as their exclusive bargaining representative. (*Id.* ¶ 7.) Quad notified the Fund of the decertification and stated that it would cease making contributions to the Fund on behalf of its Versailles employees. (*Id.* ¶ 8.) Quad also elected to cease making contributions on behalf of employees at its other facilities. (*Id.*) The Fund, in turn, calculated Quad's liability for a 2010 partial withdrawal and a 2011 complete withdrawal, and demanded that Quad make monthly payments on each according to a predetermined payment schedule. (*Id.* ¶ 9.) Quad argued that it was not liable for a 2010 partial withdrawal because its Versailles facility did not actually withdraw from the Fund until 2011. (*Id.* ¶ 10.) It also argued that the Fund incorrectly calculated the 2011 complete withdrawal assessment. (*Id.*)

The parties submitted these disputes to arbitration, as required under 29 U.S.C. §1401(a)(1). (*Id.* ¶ 11.) On May 17, 2016, the arbitrator issued his final award addressing all issues raised in the arbitration. (*Id.* ¶ 16.) The arbitrator sided with Quad on the first issue, holding that Quad's Versailles facility did not withdraw from the Fund until 2011. (*Id.*, Ex. 2.) However, the arbitrator sided with the Fund on the second issue, holding that the Fund had properly calculated Quad's 2011 complete withdrawal liability. (*Id.*) The arbitrator thus ordered the Fund to rescind the 2010 assessment. (*Id.*) It appears that Quad made payments on only the 2011 assessment

thereafter; it did not make any further payments on the rescinded 2010 assessment.[2]

Both parties immediately filed separate civil actions to affirm and/or vacate the arbitrator's decision, which the Court consolidated into one action. (ECF No. 19.) On August 17, 2016, both parties timely moved to affirm and/or vacate the arbitrator's decision. (ECF Nos. 22, 23.) On April 19, 2017, the Court issued its ruling on the parties' motions. (ECF No. 40.) The Court held that the arbitrator erred in determining that Quad's Versailles facility withdrew from the Fund in 2011 rather than 2010, and thus the Fund properly assessed liability for a 2010 partial withdrawal. (*Id.* at 8–13.) However, the Court affirmed the arbitrator's ruling that the Fund had properly calculated Quad's 2011 complete withdrawal liability. (*Id.* at 13–21.) In essence, the Court rejected both of Quad's challenges to the original 2010 and 2011 assessments. The Court instructed the parties to submit a joint proposed judgment to the Court. (*Id.* at 24.)

On May 1, 2017, the parties submitted competing proposed judgments. (ECF Nos. 42, 43.) Besides incorporating the substance of the Court's ruling, both judgments also sought to enforce the Fund's original 2010 and 2011 assessments. (*See id.*) However, the Fund's proposed judgment included a provision regarding prejudgment and postjudgment interest, whereas Quad's did not. (*See id.*) The Court subsequently entered judgment without any interest and instructed the Fund to move to amend the judgment under Rule 59(e) if it believed it was entitled to such. (ECF Nos. 44, 45.) The Fund timely filed such a motion, which is now before the Court for decision. (ECF No. 56.)

### III. DISCUSSION

The Fund moves for an award of prejudgment interest on the twelve monthly

---

[2] Quad in fact ceased making interim payments on the 2010 assessment almost a year earlier. Quad's failure to make interim payments was the subject of a separate action before this Court. The Court granted summary judgment in the Fund's favor on Quad's liability for those interim payments. *GCIU-Employer Ret. Fund v. Quad/Graphics, Inc.*, No. 216CV00100ODWAFMX, 2017 WL 1903102, at *3 (C.D. Cal. May 8, 2017).

3

payments that Quad did not make on the 2010 partial withdrawal assessment between June 2016 through May 2017; the Fund does not seek an award of prejudgment interest either on the missed interim payments before June 2016 (which are the subject of a separate action), or any payments on the 2011 complete withdrawal assessment (which Quad apparently continued to pay following the arbitrator's decision). (Mot. at 1, ECF No. 56-1.) As to postjudgment interest, however, the Fund seeks such interest on *both* the eleven missed interim payments between July 2015 and May 2016 *and* the twelve missed payments between June 2016 and May 2017 (all of which relate to the 2010 assessment). (*Id.* at 6.) The Court addresses each type of interest in turn.

## A. Prejudgment Interest

The Fund argues that there is a presumption favoring awards of prejudgment interest in ERISA cases and that there are no special circumstances here that would overcome that presumption. Quad responds that the equities in this case make such an award unjust, particularly because it ceased making payments on the 2010 assessment only in accordance with the arbitrator's decision. The Court agrees with Quad.[3]

"[A]wards of prejudgment interest . . . 'ensure that a party is fully compensated for its loss.'" *United States v. Bell*, 602 F.3d 1074, 1084 (9th Cir. 2010). The question whether to award prejudgment interest "is governed by traditional judge-made principles." *City of Milwaukee v. Cement Div., Nat. Gypsum Co.*, 515 U.S. 189, 194 (1995). "Whether to award prejudgment interest to an ERISA plaintiff is 'a question of fairness, lying within the court's sound discretion, to be answered by balancing the equities.'" *Landwehr v. DuPree*, 72 F.3d 726, 739 (9th Cir. 1995) (quoting *Shaw v. Int'l Ass'n of Machinists & Aerospace Workers Pension Plan*, 750 F.2d 1458, 1465 (9th Cir. 1985)); *see also City of Milwaukee*, 515 U.S. at 196 ("[A]llowance of interest on damages is not an absolute right. Whether it ought or

---

[3] In light of this, the Court need not address Quad's other arguments as to why the Fund is not entitled to an award of prejudgment interest.

4

ought not to be allowed . . . rests very much in the discretion of . . . a court . . . ." (citation omitted)). The district court does not abuse its discretion in declining to award prejudgment interest where the losing party did not exhibit any "bad faith or ill will." *Landwehr*, 72 F.3d at 739.

The Fund relies on several out-of-circuit cases holding that there is a presumption in favor of awarding prejudgment interest in ERISA cases. *See Moore v. CapitalCare, Inc.*, 461 F.3d 1, 12 (D.C. Cir. 2006) (collecting cases). The Court does not find those cases persuasive. First, those cases concern prejudgment interest on denial of benefit claims, and thus are not directly applicable to withdrawal liability claims. *See id.* Second, the Fund does not show that the reasons those cases give for such a presumption apply here. For example, *Moore* notes that failing to award prejudgment interest would allow a fiduciary (the plan) to benefit from wrongfully withholding ERISA benefits from the claimant, *id.* at 13, but the Fund does not show that there is any fiduciary relationship between the plan and a contributing employer. *Cf. Bos v. Bd. of Trs.*, 795 F.3d 1006, 1010 (9th Cir. 2015) (unpaid contributions are not plan assets and thus an employer controlling unpaid contributions is not an ERISA fiduciary). The other two reasons *Moore* gives for the presumption—i.e., to ensure that the prevailing party is fully compensated, and to deter attempts by the losing party to unfairly benefit from litigation delay, *id.*—are not unique to the ERISA context (let alone the withdrawal liability context), and thus do not alone justify applying a special presumption favoring an award of prejudgment interest here.

Moreover, the Court is persuaded that the equities do not favor awarding prejudgment interest. Quad prevailed before the arbitrator on the question whether it withdrew from the Fund in 2010 or 2011. The arbitrator therefore ordered the Fund to rescind the 2010 partial withdrawal assessment, and thus Quad justifiably ceased making payments on that assessment thereafter. Indeed, it is not clear how Quad had any obligation at all to make payments on an assessment that simply did not exist until this Court reinstated it. And contrary to the Fund's suggestion, Quad's argument

5

against the 2010 assessment was not wholly devoid of merit. As the Court's detailed analysis of the question suggests, Quad made a reasonable (although ultimately incorrect) argument that it withdrew from the Fund in 2010 rather than 2011—an argument that an impartial arbitrator previously accepted. In short, the arbitrator's order rescinding the 2010 assessment more than adequately justified Quad's lack of payment thereafter, and the arbitrator's neutral assessment of the dispute guarded against any concern that Quad was using spurious arguments to unfairly benefit from litigation delay.

Of course, the Court recognizes that the equities are not wholly in Quad's favor. As the prevailing party, the Fund was ultimately entitled to the money that Quad did not pay on the 2010 assessment for the past year, and the Fund could have used and invested that money during that period. Nonetheless, given the factors that clearly favor Quad on this issue, this alone does not compel an award of prejudgment interest.

**B.     Postjudgment Interest**

The Fund seeks postjudgment interest on: (1) the eleven missed interim payments between July 2015 and May 2016 (i.e., during the pendency of the arbitration); and (2) the twelve missed payments between June 2016 and May 2017 (i.e., during the pendency of this case). (Mot. at 6.) Quad responds that it "agrees that post-judgment interest . . . is appropriate, provided that the Judgment in affirmed on appeal." (Opp'n at 12, ECF No. 62.)

Postjudgment interest "shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a); *see also Barnard v. Theobald*, 721 F.3d 1069, 1078 (9th Cir. 2013) ("Under 28 U.S.C. § 1961, the award of post judgment interest on a district court judgment is mandatory."). Such interest shall be calculated from the date of the entry of a "final, appealable judgment," at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment. *See* 28 U.S.C. § 1961(a); *Dishman v. UNUM Life Ins. Co. of*

*Am.*, 269 F.3d 974, 991 (9th Cir. 2001). The weekly average 1-year constant maturity Treasury yield for the calendar week of April 24 to April 28 (i.e., the week prior to entry of judgment in this matter) is 1.06%.

The Court agrees that postjudgment interest on the twelve missed payments during the pendency of this litigation is appropriate. However, despite Quad's concession, the Court fails to see why the judgment in this action should reflect postjudgment interest on the eleven missed *interim* payments. The propriety of those interim payments is the subject of another action entirely; this action, while somewhat related, does not directly adjudicate the Fund's right to interim payments. (*See supra* note 2.) To the extent postjudgment interest on those interim payments is appropriate, it should be attached to the judgment in *that* action, not this action.

### IV. CONCLUSION

For the reasons discussed above, the Court **DENIES** the Fund's Motion to the extent it seeks prejudgment interest and to the extent it seeks postjudgment interest on Quad's missed interim payments, but **GRANTS** the Motion to the extent it seeks postjudgment interest on the twelve missed payments during the pendency of this action. The Court therefore awards postjudgment interest on $3,853,814.64 at the rate of 1.06%. The parties shall submit a stipulated proposed amended judgment reflecting such on or before **August 3, 2017**.

**IT IS SO ORDERED.**

July 28, 2017

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**